12766

BLAIR v. OWENS *ET AL.*

(150 S. E., 612)

*Messrs. Douglas & Douglas,* for appellants,

*Messrs. Frierson & McCants,* for respondent,

November 27, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This action was commenced in the Court of Common Pleas of Fairfield County on the 22nd day of December, 1927, by Claire Blair, as plaintiff, against Blair-Frazier Company, Inc., J. B. Frazier, Jr., Esther Valeria Owens, Bertha May Martin, J. W. Blair, Frances Olivia White, A. F. Blair, individually and as administrator of the estate of Lula E. Blair, deceased, and numerous judgment creditors of the Blair-Frazier Company, Inc., defendants, having for its object the foreclosure of a real estate mortgage, executed and delivered to the plaintiff by Blair-Frazier Company and J. B. Frazier, Jr., March 1, 1921, and recorded March 3, 1921 covering three parcels of land: (1) The Blair-Frazier Company store lot; (2) ginnery lot; and (3) J. B. Frazier, Jr.'s home place. Only the Blair-Frazier store lots is involved here.

The facts giving rise to the action are briefly these:

On February 7, 1910, Lula E. Blair was appointed guardian for her children, the defendants herein, Esther Valeria Owens, Bertha May Martin, J. W. Blair, Frances Olivia White, and A. F. Blair. On January 24, 1919, Blair-Frazier Company executed and delivered to the said Lula E. Blair, as guardian, a mortgage on its store lot in the town of Blairs, to secure its note to her for the sum of $2,000, which mortgage was recorded on the 15th day of February, 1919. On March 1, 1921, said Blair-Frazier Company, a corporation (in which the said Lula E. Blair owned about one-third

of the stock), and J. B. Frazier, Jr., executed and delivered to the plaintiff, Mrs. Claire Blair, a mortgage covering the said store lot, another lot known as the ginnery lot, owned by said corporation, and the home place of the said J. B. Frazier, Jr., to secure a note to her in the sum of $4,000. At the time of the execution and delivery of this last-mentioned note and mortgage, Lula E. Blair as guardian, postponed the lien of the mortgage held by her in favor of the lien of the mortgage given to Mrs. Claire Blair, the plaintiff.

On the 24th day of March, 1925, the said Lula E. Blair departed this life, survived by her above-named children, and thereafter A. F. Blair, a son, was appointed administrator of her estate. After the death of the said Lula E. Blair, the aforementioned mortgage to her, as guardian, was found among her papers by A. F. Blair. All of her said children were of age at the time of the filing of this action, except Frances Olivia White, who was at the time 20 years of age.

The plaintiff alleges that her mortgage is the first and prior lien on the Blair-Frazier store lot, by reason of the aforementioned postponement by Lula E. Blair of the mortgage held by her as guardian. The children, the above-named defendants, deny this, and further deny that the lien of the mortgage held by their mother, Lula E. Blair, as their guardian, had been postponed in favor of the lien of plaintiff's mortgage, and allege that the plaintiff had notice that the said Lula E. Blair was guardian for her said children, and that she was wholly without power or authority to postpone the lien of the mortgage held by her; that the alleged postponement was without consideration or valuable benefit to the wards of said guardian, and that the trust relation between the said Lula E. Blair and her wards was known to plaintiff at the time of the alleged postponement, and set up the note and mortgage executed by Blair-Frazier Company to Lula E. Blair, as guardian, as the first and prior lien on the store lot.

It was referred to T. K. McDonald, Esq., to take the testimony and by his report, dated June 1, 1928, he found that there was due on the mortgage of the plaintiff $4,733.29 and on the mortgage in favor of Lula E. Blair, as guardian, $2,792.58. Said referee was not required to and did not report the rank and priority of the said liens. Upon the pleadings, the report of the referee, and the testimony, the cause came on to be heard before his Honor, W. H. Grimball, at the June, 1928, term of court, and by decree, dated July 27, 1928, and filed August 1, 1928, he found and held that the mortgage of the plaintiff was the first lien upon the Blair-Frazier Company store lot.

The children of the said Lula E. Blair now appeal to this court, and by their exceptions, 18 in number, impute error to the trial judge in so holding. It is not necessary to examine separately the several exceptions, as it is only necessary to determine one question, namely: Is the plaintiff's mortgage the prior lien on the store lot of Blair-Frazier Company?

We think this question can only be answered in the negative. An extended examination of the power and authority of guardians in handling of the estates of their awards is not here necessary. That a guardian has authority to receive money in payment of a note or indebtedness due the estate of his ward, and to satisfy a lien securing the same, will admit of no doubt. Where such mortgage is marked satisfied, and the record thereof duly canceled, third parties have the right to rely upon the regularity and validity thereof, unless they have notice that such satisfaction was without sufficient and valuable consideration. *Werber v. Cain,* 71 S. C., 346, 51 S. E., 123.

"The authority of a guardian does not extend to the doing of any act detrimental to the ward. He cannot waive, abandon, or release without consideration any right or interest of the ward, surrender notes belonging to the ward's estate at a discount before their maturity, or postpone or release without payment any security belonging to the estate in his hands." 28 C. J., 1125.

"But in no case can he [the guardian] release or discharge choses in action without consideration, though he may consider them worthless, and a transaction by which a guardian released a note secured by mortgage, and accepted in payment thereof an unsecured note, has been held void. Of course the consideration must accrue to the ward; and if the guardian transfer an obligation which on its face is a part of the guardianship assets in payment of an individual debt, the purchaser's title is affected by the fraud." 12 R. C. L. 1126. See, also, *Webb v. Graniteville Mfg. Co.,* 11 S. C., 396, 32 Am. Rep., 479; *McDuffie v. McIntyre,* 11 S. C., 551, 32 Am. Rep., 500.

The uncontradicted testimony in this case is to the effect that Lula E. Blair received not a penny from the $4,000 loaned by the plaintiff to the Blair-Frazier Company, or from any other source as a consideration for the postponement of the mortgage held by her as guardian. The further uncontradicted testimony is to the effect that Blair-Frazier Company needed money for the purpose of margining cotton, and that this loan was secured from plaintiff for that purpose. L. M. Blair, president of Blair-Frazier Company testified, in part as follows:

"Q. For what purpose was this money borrowed from Mrs. Claire Blair? This $4,000? A. For the benefit of the business to hold cotton—to margin some cotton—cotton was going down so low.

"Q. And the business got this $4,000 from Mrs. Claire Blair? A. Yes."

"Q. Mr. Blair, you had Mrs. Claire Blair to make the loan of four thousand dollars to the Blair-Frazier Company, and you told her she was getting a waiver from Mrs. Lula Blair. Now you stated to Mr. Douglas that there was no consideration to Mrs. Blair—that she was not paid any money? A. Mrs. Lula Blair did not get any consideration."

The plaintiff, on cross-examination, testified in part as follows:

"Q. Mrs. Blair, you did not pay Mrs. Lula E. Blair anything at the time you took this mortgage—you did not pay her any money. A. I did not."

Not only did Mrs. Lula E. Blair not receive any consideration for the alleged postponement, and the money loaned by her was for the benefit of Blair-Frazier Company, but the evidence is clear that she knew the purpose of the loan, and that the alleged postponement was without consideration. This knowledge affected plaintiff with notice that the mortgage of Lula E. Blair, as guardian, had not been paid, and that there was no consideration for the alleged postponement and charged her with notice that the guardian was acting in conflict with her duty.

The respondent depends very much upon the case of *Poole v. Bradham,* 143 S. C., 156, 141 S. E., 267, and the circuit judge seems to have based his conclusion upon the authority of that case. We do not regard the decision there as controlling in the case at bar. The facts in that case were altogether different from those of this case. While it was decided in the *Poole case* that a guardian, in making investment for his ward, was held to the rule that he must exercise reasonable diligence and care, yet it was also decided that a guardian should not release a bond and mortgage belonging to his ward without valuable consideration. The Court thought that the guardian in the *Poole case,* under the circumstances, received valuable consideration for his act of releasing guarantors of the debt due to the guardian. It does not appear in this case that the guardian received any consideration whatever for her act in postponing the lien of the mortgage held by her. The distinction to be made is vital, and must not be overlooked. In the *Poole case,* the Court quoted with approval some of the holdings in *Werber v. Cain, supra,* and that decision is more applicable here than the conclusions of the *Poole case.*

The judgment of this Court is that the judgment of the lower Court be and the same is hereby reversed.

MESSRS. JUSTICES COTHRAN, STABLER, BLEASE, and CARTER concur.