# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Gunjit Rick Singh, Respondent,

v.

Simran P. Singh, Appellant.

Appellate Case No. 2015-000434

———————

Appeal From Charleston County
Gordon B. Jenkinson, Family Court Judge
Judy L. McMahon, Family Court Judge
Jocelyn B. Cate, Family Court Judge
Jack A. Landis, Family Court Judge
Daniel E. Martin, Jr., Family Court Judge

———————

Opinion No. 5698
Heard February 12, 2019 – Filed December 18, 2019

———————

## VACATED AND REMANDED

———————

O. Grady Query, Michael W. Sautter, and Brooke Hurt
Maiden, all of Query Sautter & Associates, LLC, of
Charleston, for Appellant.

C. Vance Stricklin, Jr., of Moore Taylor Law Firm, P.A.,
of West Columbia, Robert N. Rosen, of Rosen Law Firm,
LLC, of Charleston, and Katherine Carruth Goode, of
Winnsboro, for Respondent.

———————

**LOCKEMY, C.J.:**  Simran P. Singh appeals various family court orders[1] approving agreements to arbitrate, arguing binding arbitration of issues pertaining to child custody, visitation, and support violates the children's constitutional rights and contradicts state law and court rules.  We vacate and remand.

**FACTS**

Simran P. Singh (Mother) and Gunjit Rick Singh (Father) separated in January 2012 and subsequently entered into a settlement agreement (the Settlement Agreement).  Mother and Father have two children: S.K.S., who was born in 2001, and H.K.S.S., who was born in 2010.  In the Settlement Agreement, Mother and Father agreed the children would reside primarily with Mother.  The parties also agreed to submit certain potential disputes regarding child custody, child support, and visitation to a mutually agreed-upon arbitrator for binding arbitration.  They further agreed the arbitrator's decisions as to such issues would "be binding and non-appealable" and the arbitrator's written award would "operate as a conclusive resolution" of such issues.  In 2013, the family court granted the parties a divorce based on one year's separation and approved the Settlement Agreement, which the family court incorporated into its final divorce decree.

Later that year, Father filed an action in the family court seeking modification of custody, visitation, and child support.  Mother and Father entered a consent order, agreeing to dismiss Father's complaint and submit the matter to arbitration.  Pursuant to this agreement, the family court issued an order to arbitrate, noting the parties understood the arbitrator's decision would "<u>be final and binding upon them</u>" and they had no right to apply to any court for relief if either was dissatisfied with that decision.

An arbitration was held, and the arbitrator issued a temporary arbitration award, determining Mother was to retain physical custody over the children and Father would have visitation every other weekend.  Thereafter, the arbitrator conducted a final arbitration to determine custody, visitation, and other matters.[2]  Before the arbitrator issued the final award, the parties again amended their agreement to

---

[1] Five family court judges issued orders in this case.

[2] Prior to the final arbitration, the parties modified their agreement and the family court issued an order reflecting this modification; the only change was the addition of a specification that attorney's fees and costs would include the fees and costs incurred in arguing an earlier motion.

arbitrate, and the family court issued an order to arbitrate reflecting the amendment. That order included the following:

> d.      The parties understand that the Arbitration rules do not give explicit authority for the parties to submit child-related issues . . . to binding arbitration. However, the parties, upon advice of counsel and believing it to be in the best interest of their minor children, are submitting the issues . . . related to custody and support of their minor children . . . to binding arbitration. . . . The parties further acknowledge that this provision is submitted with their mutual consent and upon the authority of this Order of the Family Court. . . .
> . . . .
>
> h.      . . . . The parties' decision to refer this case for final, binding arbitration is made pursuant to the South Carolina Uniform Arbitration Act[3] . . . . It is the intention of the parties and the Order of this Court that beyond a request to the Arbitrator to reconsider issues which he had decided, the decision of the Arbitrator shall be final and binding except to the limited extent provided in the statutory procedure.
>
> j.      The parties also understand that the decision of the Arbitrator shall, pursuant to the South Carolina Uniform Arbitration Act . . . , become the Order of the Family Court and shall be enforceable by the Family Court, just as any Final Order. . . . The parties have agreed that they shall abide by and perform any and all aspects of the award rendered under arbitration and that a judgment shall be entered on each and every aspect of the award, as would otherwise be allowed with any Order of this Court.

The amended agreement to arbitrate also contained a provision requiring a party to immediately pay a monetary penalty as liquidated damages if either party attempted to avail himself of the family court's judgment by appealing the award or asking the family court to change or modify the award. Although we are struck by

---

[3] S.C. Code Ann. §§ 15-48-10 to -240 (2005).

the parties' assumption of the authority to instruct the family court that it *must* accept the award as an order *of the family court*, the most astonishing condition of the amended agreement to arbitrate imposed an automatic and immediate penalty of $10,000 upon any party seeking to exercise their rights in a court of law as a punishment for challenging the arbitrator's decision.

Thereafter, the arbitrator issued a partial arbitration award and, subsequently, a final arbitration award. In both, the arbitrator found a substantial and material change in circumstances had occurred and awarded custody of the children to Father with Mother to have visitation every other weekend and every other Wednesday. The final arbitration award also addressed child support and other issues between the parties.

In a departure from her previous endorsement of arbitration, Mother moved for emergency relief, asking the family court to vacate the partial and final arbitration awards as to the issues of custody, visitation, and child support. Mother argued the awards were void pursuant to Rule 60(b)(4) of the South Carolina Rules of Civil Procedure[4] because they violated the South Carolina Constitution and South Carolina statutory and case law. The family court held a hearing and issued two orders: the first denied Mother's Rule 60(b) motion as premature, and the second confirmed the partial and final arbitration awards.

Mother then filed five motions to vacate the various orders of the family court relating to the parties' agreements to arbitrate, including the orders confirming the arbitration awards and denying Mother's Rule 60(b) claims. In these motions, Mother argued the orders were void under Rule 60(b)(4) because they purported to approve agreements to submit children's issues to binding arbitration or facilitate binding arbitration of children's issues.

The family court held hearings on each motion. The court initially granted the motion to vacate the order approving the Settlement Agreement and the consent order dismissing Father's complaint and submitting the matter to arbitration; however, the court subsequently reversed itself and denied the motion, finding (1) Mother was estopped from objecting to the arbitration because she procured and accepted a benefit from the Settlement Agreement and the consent order of

---

[4] Rule 60(b)(4) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding . . . . [when] the judgment is void."

dismissal, (2) she waived her right to object by participating in the arbitration proceedings, (3) her due process rights were not violated because parents have the right to make decisions for their children, and (4) she waived her constitutional rights by agreeing to the arbitration and failing to timely challenge the arbitration. The family court ultimately denied the remainder of Mother's Rule 60(b)(4) motions.[5]

While Mother's Rule 60(b)(4) motions were pending before the family court, Mother filed a Notice of Appeal of the order confirming the partial and final arbitration awards, which we held in abeyance until the family court ruled upon Mother's motions. Thereafter, Mother timely appealed all orders denying her Rule 60(b)(4) motions. We now consider all of the orders Mother appealed.

## STANDARD OF REVIEW

"Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 833 S.E.2d 266 (2019). The family court has discretion in deciding whether to grant or deny a motion made pursuant to Rule 60(b). *Ware v. Ware*, 404 S.C. 1, 10, 743 S.E.2d 817, 822 (2013). Thus, our review of such procedural rulings "is limited to determining whether there was an abuse of discretion." *BB&T v. Taylor*, 369 S.C. 548, 633 S.C. 548, 551, 633 S.E.2d 501, 503 (2006). "We review questions of law de novo." *Ziegler v. Dorchester County*, 426 S.C. 615, 619, 828 S.E.2d 218, 220 (2019).

Although the family court's resolution of a motion under Rule 60(b) is addressed to its sound discretion, the crux of the question presented to this court on appeal—whether issues involving children can be subject to binding arbitration—is a question of law. Thus, we review this issue de novo.

## LAW/ANALYSIS

### I.    Arbitration of Children's Issues

As evidenced in the Settlement Agreement and the family court's various orders approving the parties' modifications to their agreement to arbitrate, both parties repeatedly agreed any arbitration award would be non-appealable. We also

---

[5] The family court dismissed two of Mother's motions due to mootness, finding subsequent orders superseded the orders challenged in those motions.

acknowledge that throughout the foregoing proceedings, Mother expressly agreed to submit these issues to binding arbitration and availed herself of the benefits of arbitration until the outcome no longer suited her. Nonetheless, the resolution of this question does not depend upon the rights of either parent or their waiver thereof; rather, the question we must decide is whether the family court—upon the request of the parents—can delegate its duty to determine the best interest of children to a private individual. We find it cannot.

"Both federal and state policy favor arbitrating disputes." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 34, 524 S.E.2d 839, 842 (Ct. App. 1999). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 550, 606 S.E.2d 752, 755 (2004). In South Carolina, arbitration agreements are governed by the Uniform Arbitration Act (the Arbitration Act). S.C. Code Ann. §§ 15-48-10 to -240 (2005). The Arbitration Act provides that a "written agreement to submit *any* existing controversy to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." § 15-48-10(a) (emphasis added). Section 15-48-10(b) sets forth exceptions to the application of the Arbitration Act. As our supreme court has explained, because the terms of section 15-48-10 are clear, "the court must apply those terms according to their literal meaning." *Soil Remediation Co. v. Nu-Way Envtl., Inc.*, 323 S.C. 454, 457, 476 S.E.2d 149, 151 (1996). Further, "[w]here the terms of statutes are positive and unambiguous, exceptions not made by the Legislature cannot be read into the Act by implication." *Vernon v. Harleysville Mut. Cas. Co.*, 244 S.C. 152, 157, 135 S.E.2d 841, 844 (1964). Section 15-48-10 does not specifically exclude the arbitration of issues involving child custody, visitation, and support. Therefore, we cannot read such an exception into the Arbitration Act.

Article V, sections 1 and 12 of the South Carolina Constitution empowered the General Assembly to vest "[j]urisdiction . . . in matters appertaining to minors" with the courts. Pursuant to this authority, the General Assembly enacted section 63-3-530 of the South Carolina Code (2010 & Supp. 2019), which vested family courts with exclusive jurisdiction over matters involving child custody, visitation, and support. However, this provision also gave family courts jurisdiction

> to require the parties to engage in court-mandated
> mediation pursuant to Family Court Mediation Rules or
> *to issue consent orders authorizing parties to engage in*
> *any form of alternate dispute resolution which does not*

> *violate the rules of the court or the laws of South
> Carolina*; provided however, the parties in consensual
> mediation must designate any arbiter or mediator by
> unanimous consent subject to the approval of the
> court . . . .

§ 63-3-530(39) (emphasis added).  In addition, the Arbitration Act provides that
when parties enter into an agreement to arbitrate pursuant to section 15-48-10, the
making of such agreement "confers jurisdiction on the court to enforce the
agreement under this chapter and to enter judgment on an award
thereunder."  § 15-48-180.

Rule 3 of the South Carolina Court-Annexed Alternative Dispute Resolution Rules
(the ADR Rules) identifies the actions subject to alternative dispute resolution:

> All civil actions filed in the circuit court, all cases in
> which a Notice of Intent to File Suit is filed pursuant to
> the provisions of S.C. Code § 15-79-125(A), and *all
> contested issues in domestic relations actions filed in
> family court*, except for cases set forth in Rule 3(b) or (c),
> are subject to court-ordered mediation under these rules
> unless the parties agree to conduct an arbitration.  The
> parties may select their own neutral and may mediate,
> arbitrate or submit to early neutral evaluation at any time.

Rule 3(a), SCADR (emphasis added); *see also* Rule 2, SCADR (defining
arbitration as "[a]n informal process in which a third-party arbitrator issues an
award deciding the issues in controversy" and providing such "award may be
binding or non-binding as specified in these rules").  Pursuant to Rule 3(b) of the
ADR Rules, "ADR is not required for" the following:

> (1) special proceedings, or actions seeking extraordinary
> relief such as mandamus, habeas corpus, or prohibition;
>
> (2) requests for temporary relief;
>
> (3) appeals;
>
> (4) post-conviction relief (PCR) matters;

(5) contempt of court proceedings;

(6) forfeiture proceedings brought by governmental entities;

(7) mortgage foreclosures;

(8) family court cases initiated by the South Carolina Department of Social Services; and

(9) cases that have been previously subjected to an ADR conference, unless otherwise required by this rule or by statute.

Rule 3(a) provides all domestic relations actions filed in family court are subject to court-ordered mediation. Further, Rule 3(b) does not specifically except actions involving children's issues from alternative dispute resolution.

Rule 4 of the ADR rules gives parties express permission to submit certain issues in a domestic relations action to binding arbitration but does not specifically include issues relating to children. *See* Rule 4(d)(2), SCADR (providing "the parties may submit the *issues of property and alimony to binding arbitration* in accordance with subparagraph (5)") (emphasis added); Rule 4(d)(5), SCACR ("In lieu of mediation, the parties may elect to submit *issues of property and alimony to binding arbitration* in accordance with the . . . Arbitration Act . . . or submit all issues to early neutral evaluation pursuant to these rules.") (emphasis added). Although the language of Rule 4 suggests only issues of property and alimony may be resolved by binding arbitration, neither rule expressly prohibits parties from agreeing to arbitrate disputes involving child custody, visitation, or support. Because neither our arbitration statutes nor the ADR rules speak directly to disputes involving child custody, visitation, and support, we look to the role of the family court in protecting the best interests of children.

Family courts in South Carolina have a unique role concerning the protection of children's fundamental rights and interests. In *Ex Parte Tillman*, our supreme court recognized children have fundamental rights under our state's Privileges and Immunities Clause, stating,

[T]here is a liberty of children above the control of their parents, which the courts of England and this country

have always enforced. When the parent, in asserting his claim to the custody of his child, disregards the correlative right of the child to care and maintenance at his hands, it is universally held that the right of the parent is at an end, and the child for itself, or another on its behalf, may assert the custody and control of the parent to be an illegal restraint upon its liberty.

84 S.C. 552, 560, 66 S.E. 1049, 1052 (1910). More recently, in *South Carolina Department of Social Services v. Cochran*, our supreme court determined,

[A] child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care. In balancing these interests, the best interest of the child is paramount to that of the parent.

364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005). "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether [termination of parental rights] is appropriate." *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013).

In addition, we recognize a child's fundamental rights in many other circumstances. *See Schall v. Martin*, 467 U.S. 253, (1984) (recognizing the due process rights of juveniles in pretrial detentions); *Parham v. J. R.*, 442 U.S. 584, 600 (1979) ("It is not disputed that a child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for medical treatment."); *Doe v. Bd. of Trustees, Richland Sch. Dist. Two*, 2015 WL 3885922, at *2 (S.C. Ct. App. June 24, 2015) (recognizing a student's procedural due process rights in a school transfer proceeding); *In re Arisha K.S.*, 331 S.C. 288, 293, 501 S.E.2d 128, 131 (Ct. App. 1998) (recognizing a child's due process rights in a juvenile proceeding).

Longstanding tradition of this state places the responsibility of protecting a child's fundamental rights on the court system. As our supreme court expressed in 1910,

The question of the custody of minors and their illegal restraint has always been recognized as a judicial question to be determined by the courts. That it is the function of the courts to decide issues of this kind has

been held in this state by unbroken authority from the [c]ase of [*In re*] *Kottman*, [11 S.C. Eq. (2 Hill Eq.) 363 (1834) . . . and *Prather v. Prather*[, 4 S.C. Eq. (4 Des. Eq.) 33 (1809)], to *Ex parte Rembert*, 82 S.C. 336, 64 S.E. 150 [(1909)].

*Tillman*, 84 S.C. at 563, 66 S.E. at 1053 (citation omitted). This responsibility originates from our recognition of the doctrine of *parens patriae*. The United States Supreme Court explained this doctrine as follows:

> *Parens patriae* means literally "parent of the country." The *parens patriae* action has its roots in the common-law concept of the "royal prerogative." The royal prerogative included the right or responsibility to take care of persons "who are legally unable, on account of mental incapacity, whether it proceed from 1st. nonage: 2. idiocy: or 3. lunacy: to take proper care of themselves and their property." At a fairly early date, American courts recognized this common-law concept, but now in the form of a legislative prerogative: "This prerogative of *parens patriae* is inherent in the supreme power of every State, whether that power is lodged in a royal person or in the legislature [and] is a most beneficent function . . . often necessary to be exercised in the interests of humanity, and for the prevention of injury to those who cannot protect themselves."

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982) (alteration in original) (footnotes omitted) (quoting *Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 57 (1890)).

Our supreme court explained the doctrine in *Cook v. Cobb*:

> [T]he state, as *parens patriae*, may limit one's parental rights in order to promote a minor child's best interests. This principle is founded upon the state's duty to protect those of its citizens who are unable because of infancy to take care of themselves, and on the right of the child, as citizen and ward, to the state's protection. The right of a

parent to the custody of his or her child is therefore subject to the power of the court to protect the child's welfare.

271 S.C. 136, 145, 245 S.E.2d 612, 617 (1978) (citations omitted). Our supreme court, quoting *Tillman*, proclaimed, "The rights of the father and mother are both subject to the still higher right of the child to have its welfare safeguarded." *Id.* at 145, 245 S.E.2d at 617 (quoting *Tillman*, 84 S.C. at 561, 66 S.E. at 1052).

Likewise, our supreme court recognized as a part of *parens patriae*, the "[f]amily [c]ourt is vested with the exclusive jurisdiction to ensure that, in all matters concerning a child, the best interest of the child is the paramount consideration." *In re Stephen W.*, 409 S.C. 73, 78, 761 S.E.2d 231, 234 (2014) (quoting *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992)); *see also Cook*, 271 S.C. at 140, 245 S.E.2d at 614 ("The welfare of the child and what is in [his] best interest is the primary, paramount and controlling consideration of the court in all child custody controversies."); *Powell v. Powell*, 256 S.C. 111, 116, 181 S.E.2d 13, 16 (1971) ("It is the duty of all courts to do that which is for the best interest of minor children and to protect their rights at every stage of a proceeding, and this is particular[ly] true where their custody is involved."); *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 536 S.E.2d 372 (2000) (noting our courts have a "duty to zealously guard the rights of minors").

Our laws governing child custody reflect the legislature's recognition of this duty. *See* S.C. Code Ann. §§ 63-15-10 to -260 (2010 & Supp. 2019). Section 63-15-30, which pertains to a child's preference for custody, provides, "In determining the best interests of the child, *the court* must consider the child's reasonable preference for custody. *The court* shall place weight upon the preference based upon the child's age, experience, maturity, judgment, and ability to express a preference." (emphasis added). Section 63-15-230(A) states, "*The court* shall make the final custody determination in the best interest of the child based upon the evidence presented." (emphasis added). Moreover, section 63-15-240(B) provides that "[i]n issuing or modifying a custody order, *the court* must consider the best interest of the child." (emphasis added). Thus, South Carolina law and the public policy of this state require the family court to maintain jurisdiction over issues involving children to ensure their best interests are served.

Binding arbitration prevents family courts from acting as *parens patriae* to protect the best interests of children because it largely precludes judicial review of an arbitration award. "When a dispute is submitted to arbitration, the arbitrator

determines questions of both law and fact.  Generally, an arbitration award is conclusive and courts will refuse to review the merits of an award.  An award will be vacated only under narrow, limited circumstances."  *Gissel v. Hart*, 382 S.C. 235, 241, 676 S.E.2d 320, 323 (2009) (citations omitted).  In *Gissel*, our supreme court further explained parties seeking to vacate an arbitration award face an extremely high hurdle:

> [F]or a court to vacate an arbitration award based upon an arbitrator's manifest disregard of the law, the governing law ignored by the arbitrator must be well defined, explicit, and clearly applicable.  Case law presupposes something beyond a mere error in construing or applying the law.  Even a "clearly erroneous interpretation of the contract" cannot be disturbed.  The focus is on the conduct of the arbitrator and **presupposes something beyond a mere error in construing or applying the law**.  An arbitrator's "manifest disregard of the law," as a basis for vacating an arbitration award[,] occurs when the arbitrator knew of a governing legal principle yet refused to apply it.  Factual and legal errors by arbitrators do not constitute an abuse of powers, and a court is not required to review the merits of a decision so long as the arbitrators do not exceed their powers.

*Id*. at 241-42, 676 S.E.2d at 323-24 (citations omitted).

Additionally, in *Swentor v. Swentor*, 336 S.C. 472, 520 S.E.2d 330 (Ct. App. 1999), we considered whether an arbitration award determining the parties' property division was binding on the family court.  Applying the Arbitration Act, we concluded "the family court's traditional power to approve property and separation agreements, which includes the power to consider the substantive fairness of the agreement, simply does not extend to arbitration agreements and awards presented to the family court."  *Id.* at 482, 520 S.E.2d at 336.  Thus, we determined "the Arbitration Act prohibits the family court from exercising this power when presented with arbitration agreements."  *Id.* at 484, 520 S.E.2d at 337.  However, we also noted our holding was "limited to arbitration agreements resolving issues of property or alimony, and d[id] *not apply to agreements involving child support or custody*."  *Id.* at 485 n.6, 520 S.E.2d at 338 n.6 (emphasis added).

As the foregoing demonstrates, the law governing arbitration generally forecloses the family court's ability to review the merits of an arbitrator's decisions. Furthermore, here, the parties' agreement to arbitrate goes one step further by imposing a $10,000 fine upon any party who seeks review of the arbitrator's decision.

Although our supreme court has not specifically addressed binding arbitration and the family court's duty to protect the best interests of children,[6] in *Moseley v. Mosier*, our supreme court considered whether a family court could hold a party in contempt for failing to pay the full amount of child support as provided in the parties' separation agreement. 279 S.C. 348, 306 S.E.2d 624 (1983). There, the court held the following with regard to the family court's jurisdiction concerning child support:

> Family courts may always modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability. Today we clarify the issue by stating that family courts have continuing jurisdiction to do whatever is in the best interests of the child *regardless of what the separation agreement specifies*.

*Id*. at 351, 306 S.E.2d at 626 (emphasis added) (citation omitted).

Subsequently, in *Ex parte Messer*, we recognized the enforceability of arbitration clauses in separation agreements, generally. 333 S.C. 391, 509 S.E.2d 486 (Ct. App. 1998). However, we noted, "*Moseley* makes it clear *except for matters relating to children, over which the family court retains jurisdiction to do whatever is in their best interest*, parties to a separation agreement may 'contract out of any continuing judicial supervision of their relationship by the court.'" *Id*. at 395, 509 S.E.2d at 487-88 (emphasis added) (quoting *Moseley*, 279 S.C. at 353, 306 S.E.2d at 627). We concluded, "Parties to a separation agreement may agree to submit all disputes, *other than those involving their children*, to arbitration and thus deprive

---

[6] However, in *Kosciusko v. Parham*, Op. No. 5690 (S.C. Ct. App. filed Nov. 6, 2019) (Shearouse Adv. Sh. No. 43 at 48, 52), we recently concluded the court rules and established law of this state "preclude[d] the submission of children's issues to binding arbitration" and held the family court lacked "subject-matter jurisdiction to sanction or approve binding arbitration of children's issues").

the family court of its traditional powers of enforcement over those disputes." *Id.* at 395, 509 S.E.2d at 488 (emphasis added).

Although we did not expressly address the enforceability of arbitration clauses pertaining to the determination of children's issues in *Messer*, based on the principles our supreme court expressed in *Moseley*, we find family courts must retain jurisdiction over matters involving children to serve their best interests.

In the eyes of the court, an agreement to arbitrate matters involving children stands in the same position as an agreement to award custody. The North Carolina Supreme Court, in addressing the same issue we face, reasoned:

> Just as parents cannot by agreement deprive the courts of their duty to promote the best interests of their children, they cannot do so by arbitration. Those provisions of an arbitration award concerning custody and child support, like those provisions in a separation agreement, will remain reviewable and modifiable by the court. With regard to these issues, the need for the court to protect the welfare of children outweighs the advantages of arbitration.

*Crutchley v. Crutchley*, 293 S.E.2d 793, 798 (N.C. 1982). We apply the same rationale here. A court cannot be bound by an arbitration award and simultaneously act as *parens patriae* on behalf of a child. Therefore, although parties are free to agree to submit these issues to alternative dispute resolution, any agreement to limit the family court's ability to review such an award is unenforceable.

Prohibiting courts from overseeing arbitration decisions that involve the best interest of a child infringes upon the public policy of this state. Our society has an inherent interest in every child. As we stated, family courts are charged with protecting that interest for every child. Arbitrators are not held to the same standards as family court judges, and the law does not impose upon them the same duty to act in the best interest of a child. According to the arbitration agreements Mother and Father entered into, the arbitrator usurped all of the decision-making authority of the family court but undertook none of the duties imposed upon the court. Under the arbitration agreements, this court would not have the ability to review the arbitrator's decision regardless of whether it conflicted with the best interest of the children. This opens the question of whether family courts would

have the ability to modify such arbitration awards should a change in circumstance occur after a final award.

We find the court rules, decisions, and laws of this state vest the family court with exclusive jurisdiction to decide issues involving children in the best interests of the children. Therefore, we hold any provision in an agreement or order that seeks to bind the court or limit its jurisdiction to determine the best interests of a child is unenforceable. Thus, the family court had no authority to order the submission of or approve the parties' agreement to submit such issues to binding arbitration. By doing so, the court improperly delegated its duty to safeguard the best interests of the children. Although parties are free to agree on their own to engage in alternative dispute resolution as to issues involving children, family courts must retain continuing jurisdiction over those matters, and any agreement of the parties to submit such issues to binding arbitration is unenforceable.[7] The family court has the duty to review any awards de novo and may modify, change, or vacate an arbitrator's findings as to child custody, visitation, and support in its own determination of the best interests of the children. Accordingly, to the extent the family court's orders sanctioned or ordered the submission of children's issues to binding arbitration, we hold such orders are void ab initio.

## II.    Estoppel

The doctrine of equitable estoppel is often confused with waiver. "Equitable estoppel occurs where a party is denied the right to plead or prove an otherwise important fact because of something which he has done or failed to do." *Parker v. Parker*, 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994). "Waiver is a voluntary and intentional abandonment or relinquishment of a known right." *Id*. However, "the distinction between waiver and estoppel is close, and sometimes the doctrines merge into each other with almost imperceptible gradations." *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 388 (1992) (citations omitted) (internal quotations omitted).

Father argues Mother is estopped from challenging the arbitration of issues pertaining to their children because she agreed to the arbitration provision in the Settlement Agreement. We believe the argument presented by Father supports an assertion of waiver, rather than estoppel. Regardless, as we explained above, this case involves the fundamental rights of children in a custody action and the court's

---

[7] Father concedes in his brief that the family court retains jurisdiction over issues of custody, visitation, and support.

duty to protect the rights and interest of children. Thus, any waiver on the part of the parent cannot be found to abrogate the rights of the child or the duty of the court. *See* S*.C. Dep't of Soc. Servs. v. Parker*, 275 S.C. 176, 178, 268 S.E.2d 282, 283 (1980) (finding the doctrine of estoppel cannot "be applied to deprive [the State] of the due exercise of its police power or to thwart its application of public policy."); *Blair v. Owens*, 153 S.C. 94, 97, 150 S.E. 612, 613 (1929) ("The authority of a guardian does not extend to the doing of any act detrimental to the ward. He cannot waive, abandon, or release without consideration any right or interest of the ward . . . .").

We acknowledge the parties made a conscious decision to include an arbitration provision in the Settlement Agreement and reaffirmed their desire to arbitrate those issues by entering into agreements to arbitrate, not once, but three times. A parent *cannot* waive the rights of any child or the duty of the family court. *See Am. Mut. Fire Ins. Co. v. Passmore*, 275 S.C. 618, 621-22, 274 S.E.2d 416, 418 (1981) (finding an illegal insurance policy cannot be made valid by the invocation of the doctrine of waiver or estoppel); *Kelm v. Kelm*, 749 N.E.2d 299, 304 (Ohio 2001) (finding because arbitration of visitation and custody matters violates public policy, "appellee has not, by virtue of her acquiescence to the original shared parenting plan, waived her right to challenge that plan's provision for arbitration of custody and visitation matters."); *see also Kosciusko*, Op. No. 5960 (Shearouse Adv. Sh. 43 at 50 n.12) (noting "subject-matter jurisdiction cannot be waived").

**CONCLUSION**

Based upon the foregoing, we vacate the family court's order confirming the arbitration award and remand this case to the family court for a de novo hearing on the issues of child custody, visitation, and support. Moreover, to the extent they submit issues of child custody, visitation, and support to binding arbitration, any portions of any orders appealed by Mother that purport to divest the family court of its ability to determine the best interest of the minor children are void and unenforceable.

**VACATED AND REMANDED.**

**SHORT and MCDONALD, JJ., concur.**