20719

Arline Sloan COOK and J. Glenn Cook, Jr., Respondents, v. Roger L. COBB and Elizabeth Grier Cobb (a minor under the age of 14 years), Respondents, and Janet Nichols Cobb, a/k/a Janet Nichols & Janet Nichols Pfeifer, Appellant.

(245 S. E. (2d) 612)

*Robert F. Fuller,* of *Rogers, McDonald, McKenzie, Fuller & Rubin,* Columbia, *for appellant.*

*Edmund H. Monteith,* of *Monteith, Monteith & Gottlieb,* Columbia, *for respondents Arline Sloan Cook, et al.*

*Robert L. Green,* Columbia, *for respondent Roger L. Cobb.*

*Theresa H. Potts,* Columbia, *Guardian Ad Litem for the minor respondent Elizabeth Grier Cobb.*

June 22, 1978.

LITTLEJOHN, Justice.

This appeal involves a dispute between the paternal grandparents and the mother over custody of an eight-year-old child. The Family Court awarded custody to the grandparents, from which order the mother has appealed. We affirm.

This action was instituted by Arline Sloan Cook, the paternal grandmother, and J. Glenn Cook, Jr., the paternal step-grandfather, referred to collectively as the grandparents, for the purpose of obtaining custody of the child, and permission to adopt her. The father, Roger L. Cobb, joined in the grandparents' prayer that they be granted custody of the child. The mother, Janet Nichols Cobb (now Pfeifer) answered, praying that the grandparents' petition be denied, and that the court confirm the award of custody embodied

in her divorce decree, which vested custody in her in May, 1976.

Following the commencement of this action in August of 1976, a consent order was issued establishing temporary physical possession of the child, *pendente lite,* with the grandparents. By order of December 14, 1976, the Family Court assumed temporary custody of the child, and placed the child in the home of the grandparents, granted the grandparents certain authority *in loco parentis* to care for the child, and provided for certain visitation rights. After an extensive hearing on the merits, the Family Court, by its order dated August 4, 1977, denied the grandparents' request to adopt the child, but awarded them permanent custody of the child subject to visitation privileges in the mother. It is the custody facet of this order that is before us on appeal.

The mother and father were married August 16, 1967. Of that marriage was born the child, Elizabeth Grier Cobb, on October 14, 1969. As a result of marital difficulties, the mother and father commenced living separate and apart prior to October 9, 1973. On that date, they entered into an agreement governing the terms of their separation, which included a provision allowing the mother exclusive custody of the minor child. Following the separation, the mother moved to New York City to pursue a theatrical career, and made arrangements with the grandparents to leave the child with them. From October, 1973, until the present time, the child has been in the principal custodial possession of the grandparents.

On May 12, 1976, the mother was awarded a final decree of divorce from the father. The agreement entered into in 1973 between the mother and the father, giving the mother exclusive custody of the child, was incorporated into the divorce decree by reference.

Subsequent to her divorce, the mother advised the father and grandparents of her intention to carry the child to her

home in New York City and to resume principal custodial possession. This action ensued.

On August 31, 1976, the mother married Richard Pfeifer of New York, and she lives now with her new husband in the state of New Jersey. It is inferable that she entered into this marriage, at least partially, in order to enhance the like- lihood of gaining and/or keeping custody of the child.

The principal question before us is whether the lower court erred in determining that it was in the child's best interest to remain with the grandparents. In this appeal the burden of showing error is upon the mother. She has failed to carry this burden.

The welfare of the child and what is in his/her best interest is the primary, paramount and controlling consideration of the court in all child custody con- troversies. *Davenport v. Davenport,* 265 S. C. 524, 220 S. E. (2d) 228 (1975) ; *Peay v. Peay,* 260 S. C. 108, 194 S. E. (2d) 392 (1973) ; *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89 (1943). The position advanced by the mother is that the "best interest of the child" principle is subject to the qualification that a parent with a suitable home environment has a right to the custody of her child absent a showing of abandonment, unfitness, or extraordinary circumstances. While we recognize the preference given to parents as against others in child custody disputes, the rights of even a fit parent are merely presumptive and must yield when the best interests of the child would not be subserved. We held in *Koon v. Koon, supra,* quoted approvingly in *Driggers v. Hayes,* 264 S. C. 69, 212 S. E. (2d) 579 (1975), that:

"The rule that obtains in this and practically all jurisdic- tions at the present day is, that the well-being of the child is to be regarded more than the technical legal rights of the parties, so that, following this rule, it is generally held that the child will not be delivered to the custody of either parent where it is not to its best interest. The right of the parent is

not absolute and unconditional. The primary consideration for the guidance of the Court is what is best for the child itself. This is declared not only in specific terms by our statute . . . but it has been so declared time and again by the Court."

It is undisputed that since October, 1973, the grandparents have exercised principal custodial possession of the child with the mother's consent. Even before that time, the grandparents played a substantial role in caring for the child. Although the mother maintains that her intentions were that the child would live with the grandparents only temporarily, until such time as the mother could support both herself and the child, she made no attempt to resume custodial possession of the child for nearly three years. During that time, the grandparents provided for the child's schooling, welfare, and substantially all of her support. The grandmother does not work outside the home, and is thus able to devote a great deal of time to caring for the child and meeting her physical and emotional needs. The grandfather has a good job, and the grandparents' home is an excellent environment for the child. The record overwhelmingly establishes, and the mother readily concedes, that the grandparents have provided exceptional care for the child, that there is a very warm and loving relationship between the grandparents and the child, that the grandparents are able and willing to care for the child, and that the child is happy, well-adjusted, and does well in school. The father lives in the same city as the grandparents, and visits the child regularly.

The mother argues that she and her new husband are now able to provide the child with a suitable home. The record reflects that she shared an apartment with single men while living in New York, and that she lived with her present husband for some time before they were married. Her present husband has been previously married and is the father of a five-year-old son, for whose support he is obligated. The son is in the custody of his first wife.

In determining the best interest of the child, the court undertakes the awesome task of looking into the past and predicting which of the two available environments will advance the best interest of the child and bring about the best adjusted mature individual. To perform this task the court takes into consideration facts of the past and facts of the present. The record abundantly reflects that in the past the mother has exercised poor judgment. The conditions under which she has been living in New York are certainly less than stable. She admitted that during one year she lived in seven different places with various companions, both male and female. Among her associates were homosexuals. The environment into which the mother would now take the child is far from ideal. On the other hand, the grandparents provide an environment which even the mother admits is excellent.

We are of the opinion that to now cause the child to be removed from the grandparents, with whom she has lived for four-and-a-half years, and place her with her mother and a step-father whom she hardly knows, would be a difficult, and possibly traumatic experience, and would not be in the child's best interest. In support of this conclusion, we quote approvingly from 59 Am. Jur. (2d), *Parent and Child,* § 39:

"[W]here there has been a voluntary surrender of possession of the child to another, coupled with continuance of such possession for a substantial period of time, the court may terminate the custodial rights of the parents when to do so is in the best interests of the child, as, for example, where the affections of the child and of the foster parents have become mutually engaged to such an extent that a severance of this relationship would be harmful to the child."

Normally, grandparents have no standing to claim entitlement to the custody of their grandchildren. The mother and father are the joint natural guardians of their minor children and are charged with their welfare. *See*

§ 21-21-10, *Code of Laws of South Carolina* (1976). Nevertheless, it is provided by statute that "[t]he welfare of the minor shall be the first consideration" concerning the custody of the minor. § 21-21-10. We therefore base our conclusion affirming custody in the grandparents, not on any inherent or statutory right that they might have to the custody of grandchildren, but rather on what we regard to be in the best interests of the child under the facts of this case.

It is the rule in this state that a party seeking to upset custody of a child and bring about a change of custody must prove a change of conditions which substantially affects the interest and welfare of the child. *Jones v. Ard,* 265 S. C. 423, 219 S. E. (2d) 358 (1975); *Barrett v. Barrett,* 261 S. C. 111, 198 S. E. (2d) 532 (1972); *Pullen v. Pullen,* 253 S. C. 123, 169 S. E. (2d) 376 (1969). Generally, the change of conditions which justifies a change of custody must occur after the date of a decree establishing custody, and before the action seeking to upset custody is filed. Thus, in the absence of a change of circumstances affecting the welfare of the child, "a final decree of divorce awarding custody in accordance with an agreement of the parties is conclusive between them . . .." *Sharpe v. Sharpe,* 256 S. C. 517, 183 S. E. (2d) 325 (1971); *Barrett v. Barrett, supra.*

In the case at bar, the mother and father entered into a separation agreement, dated October 9, 1973, which gave custody of the minor child to the mother, subject to visitation rights in the father. The final uncontested decree of divorce dated May 12, 1976, incorporated the 1973 agreement of the parties:

"The Court further finds that since the bringing of this action that the parties have entered into an agreement whereby they have settled all matters of custody, support, and a division of personal property; and that said Agreement should be incorporated into this Final Decree of Divorce." [1]

---

[1] The judge is obviously referring to the October 9, 1973 agreement.

An agreement incorporated into a decree by reference is enforceable by the court, but the fact that an agreement has been made relative to the custody of a child is not necessarily conclusive that the best interests of the child have been taken into consideration. This is especially true where the judge has perfunctorily adopted the agreement as a part of an uncontested divorce decree. It is patent from a reading of the decree that there was no exercise of judicial discretion in determining whether the best interests of the minor child were being served by adopting an agreement entered into almost three years previously. For this reason, we have no difficulty in concluding that the date from which a change of condition must be judged is from the date the agreement was entered into (October 9, 1973), rather than the date of the decree incorporating the agreement (May 12, 1976). The following changed conditions have occurred since the agreement regarding custody of the minor child, and in our opinion are sufficiently significant to justify a change of custody of the minor child from the mother to the grandparents:

(1) The mother has been content to leave the child with the grandparents for a period of almost three years; for all practical purposes the grandparents have had custody of the child.

(2) During this period of time, the child, for all intents and purposes, has come to regard her grandparents as parent figures, and herself as part of that family group.

(3) The mother has moved to New York City to pursue, unsuccessfully, a theatrical career.

(4) While in New York City, the mother adopted a rather bohemian lifestyle.

The mother next argues that application of the "best interests of the child" principle without giving due consideration to her rights, as the natural parent, to the care and custody of her child constitutes an abridgement

of her constitutional rights. This argument overlooks the well-recognized principle that the state, as *parens patriae,* may limit one's parental rights in order to promote a minor child's best interests. *Prince v. Massachusetts,* 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1943); 59 Am. Jur. (2d), *Parent and Child,* §§ 9, 10. This principle is founded upon the state's duty to protect those of its citizens who are unable because of infancy to take care of themselves, and on the right of the child, as citizen and ward, to the state's protection. 59 Am. Jur. (2d), *Parent and Child,* § 9. The right of a parent to the custody of his or her child is therefore subject to the power of the court to protect the child's welfare. This principle was embraced by this court in the case of *Tillman v. Tillman,* 84 S. C. 552, 66 S. E. 1049 (1910), where it was stated:

"The rights of the father and mother are both subject to the still higher right of the child to have its welfare safeguarded."

This exception is without merit.

Finally, the mother contends that it was error for the lower court to admit in evidence the report of a child psychiatrist. The report was based on an interview of the grandparents, the father, and the child, and was, by its very nature, replete with hearsay. The grandparents argue that the report was properly admitted under Family Court Rule 18(c), 1976 *Code, as amended,* which allows the admission in evidence of "[t]he written statement by a physician showing that the patient was treated at certain times and the types of ailment."

We agree with the mother that the lower court erred in admitting the psychiatrist's report in evidence. The report was obviously procured in anticipation of litigation, and was of a self-serving nature. The child was not taken to the psychiatrist for the purpose of being treated for an ailment, and the report was therefore outside of the scope

of the rule. Nevertheless, we find the error to be harmless. We disregard the report and reach the same result.

We conclude that the lower court was justified in changing custody of the minor child from the mother to the grandparents. The remaining exceptions are without merit and are overruled under Rule 23.

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.