THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Barbara Hyland Davis, Appellant/Respondent,
 v.
 Randall L. Davis, Respondent/Appellant.
 
 
 

Appeal From Greenville County
  Robert N. Jenkins, Sr., Family Court 
 Judge

Unpublished Opinion No. 2004-UP-064
 Heard December 9, 2003  Filed February 
 5, 2004

AFFIRMED IN PART and REMANDED IN PART

 
 
 
 David A. Wilson and Kenneth C. Porter, both of Greenville, for Appellant-Respondent.
 Elizabeth Kimberly Berry, of Greenville, for Respondent-Appellant.
 
 
 

PER CURIAM: Barbara Hyland Davis 
 (Wife) and Randall K. Davis (Husband) appeal from several aspects of a divorce 
 decree.  We affirm in part and remand in part.
FACTS
The parties married in May 1984 and separated 
 in October 1998.  They have two sons, born in 1990 and 1992. At the time of 
 the final divorce hearing, Husband was thirty-eight years old, and Wife was 
 thirty-nine years old. Both parties were employed during the marriage.  Husband 
 has a bachelors degree in engineering and was employed at Design/Build Engineers, 
 Inc., a company in which he holds an ownership interest. Wife has a masters 
 degree in business administration and, at the time of separation, was employed 
 in the accounting department at the Michelin Corporation. 
Wife instituted this action against Husband 
 in November 1998 seeking an order of separate maintenance and support, equitable 
 apportionment of marital property and debts, alimony, custody, and attorneys 
 fees and costs. Husband answered and counterclaimed, seeking custody of the 
 children and equitable apportionment of marital property and debts. 
At the commencement of the case, Wife moved 
 to exclude the testimony of Husbands expert witness, James F. Joyner, III, 
 on the issue of the valuation of Husbands business interests.  Wifes basis 
 for this motion was that a pre-trial order required all expert witnesses be 
 named no later than twenty-one days before trial and Husband named Joyner only 
 twenty days before trial. [1] Despite Wifes objection to Joyners testimony on the valuation of Husbands 
 business interests, she consented to Joyners testimony on the issues of Husbands 
 income and income potential and Wifes need for alimony. The family court granted 
 Wifes motion to exclude Joyners testimony on the valuation of Husbands business 
 interests, but allowed Joyner to testify as to the other issues.  Husband proffered 
 Joyners testimony on the valuation of his business interests.  
The family court granted Wife a divorce 
 from Husband on the grounds of one years continuous separation; ordered Husband 
 to pay quarterly installments of $4,729.75 in rehabilitative alimony for two 
 years; granted joint custody of the minor children to Husband and Wife, with 
 primary placement of the children being awarded to Husband; valued and equitably 
 apportioned marital property and debts; and denied Wifes request for attorney 
 fees. 
Husband moved for reconsideration under 
 Rule 59(e), SCRCP, arguing the family court erred by excluding the testimony 
 of his expert witness regarding the value of his business interests, and in 
 applying low minority shareholder and marketability discounts to those interests.  
 The family court issued an order increasing the amount of the minority shareholder 
 and marketability discounts, but not to the extent that Husband asserted the 
 discounts should be applied.  The court denied Husbands request to reconsider 
 its decision to exclude the testimony of his expert witness.   Both Husband 
 and Wife appeal. 
STANDARD OF REVIEW
In appeals from the family court, 
 this court has authority to find the facts in accordance with our own view of 
 the preponderance of the evidence. Woodall v. Woodall, 322 S.C. 7, 10, 
 471 S.E.2d 154, 157 (1996).  This broad scope of review, however, does not require 
 us to disregard the findings of the court below. Stevenson v. Stevenson, 
 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We are mindful that the family 
 court judge, who saw and heard the witnesses, was in a better position to evaluate 
 their credibility and assign comparative weight to their testimony. McAlister 
 v. Patterson, 278 S.C. 481, 483, 299 S.E.2d 322, 323 (1982).
LAW/ANALYSIS
I. Equitable Distribution
 Husband and wife agreed to distribute 
 their marital property equally; however, on appeal the parties argue the family 
 court erred in valuing Husbands minority interests in two businesses and in 
 valuing a 1998 Harley-Davidson Motorcycle.  We address the valuation of the 
 two businesses and the motorcycle separately.
A. Valuation of Design/Build and DBE
As a threshold 
 matter, Husband argues in his cross-appeal that the family court abused its 
 discretion in refusing to admit the testimony of his valuation expert, Joyner, 
 as to the value of Husbands interest in Design/Build Engineers, Inc. and DBE 
 Partnership, LLP.  We agree. 
The admission of expert testimony and 
 other evidence is a matter addressed to the sound discretion of the family court 
 judge and absent a clear abuse of discretion, the family courts ruling will 
 not be disturbed on appeal.  Elledge v. Richland/Lexington Sch. Dist. Five, 
 352 S.C. 179, 185, 573 S.E.2d 789, 792 (2002).  
The family court excluded Joyners testimony 
 on the grounds that Husband failed to designate Joyner as an expert witness 
 at least twenty-one days before the final hearing, as required by a pre-trial 
 order entered by the court. It is undisputed that Husband first notified Wife 
 of his intent to call Joyner as an expert twenty days before the final hearing 
 was scheduled. 
Rule 16(b) of the South Carolina Rules 
 of Civil Procedure grants the family court wide latitude to establish rules 
 regarding the conduct of discovery in each case, including the authority to 
 prescribe the time periods for identifying the exhibits or witnesses to be presented 
 at trial.  These pre-trial orders control the subsequent course of the case, 
 unless modified on motion, or at the trial to prevent manifest injustice.  
 Rule 16(b), SCRCP.  Accordingly, a pre-trial order should not be blindly followed, 
 but should instead be applied in a manner that best serves the ends of fairness 
 and judicial economy.  See James F. Flanagan, South Carolina Civil 
 Procedure 137 (2d ed. 1996) (The language [of Rule 16, SCRCP], particularly 
 the manifest injustice standard for modifying the order, suggests that good 
 reason should be required for any changes.  The order should not be followed 
 blindly.). 
Our courts have held that the exclusion 
 of a witness is a severe sanction that should not be imposed lightly or summarily. See Kramer v. Kramer, 323 S.C. 212, 217, 473 S.E.2d 846, 848-49 
 (Ct. App. 1996) (finding that a court may exclude a witness only after the 
 court inquires into (1) the type of witness involved; (2) the content of the 
 evidence to be presented; (3) the nature of the failure to identify the witness; 
 and (4) the degree of surprise to the other party.).  The issue of excluding 
 a witness based on a pretrial order came before this court under similar facts 
 in Jumper v. Hawkins, 348 S.C. 142, 558 S.E.2d 911 (Ct. App. 2001).  
 In Jumper, the family court excluded a witness when the party failed 
 to comply with the pre-trial order requiring all witnesses to be designated 
 at least ten days before trial.  There, the opposing party was not informed 
 of the excluded witness until, at the latest, eight days before trial. Id. at 144, 558 S.E.2d at 912.  In finding the family court abused its discretion 
 by excluding the witness, this court stated:
We hold that even in the face 
 of a pre-trial order mandating the disclosure of a witness by a certain date, 
 a trial judge is required to consider and evaluate the following factors before 
 imposing the sanction of exclusion of a witness: 

 (1) the type of witness involved; 
 (2) the content of the evidence 
 emanating from the proffered witness; 
 (3) the nature of the failure 
 or neglect or refusal to furnish the witness name; 
 (4) the degree of surprise to 
 the other party, including the prior knowledge of the name of the witness; and 
 (5) the prejudice to the opposing 
 party.

 Id. at 152, 558 S.E.2d at 916. [2] 
In the present case, the record 
 provides no indication that the family court adequately considered these factors 
 when deciding to exclude Joyners valuation testimony.  As an expert in valuing 
 closely-held corporations, Joyners testimony would have been highly probative 
 on the question of the proper valuation methodology to apply in this case.  
 Husbands failure to comply with the terms of the pre-trial order by one day 
 resulted in little surprise or cognizable prejudice to Wifes case.  Wifes 
 own expert and attorney had ample time to meet with Joyner and did, in fact, 
 question Joyner the day before trial.  Furthermore, Wife consented to the admission 
 of Joyners testimony on the issue of determining salary for purposes of awarding 
 alimony.  As such, we find the family court erred in excluding the testimony 
 of Husbands expert witness.
Moreover, we cannot say 
 the family courts exclusion of Husbands expert witness was harmless.  Joyners 
 proffered testimony suggested applying a thirty percent minority discount and 
 twenty percent marketability discount to Husbands interest in DBE.  As to husbands 
 other business interest in Design/Build, Joyner suggested applying a twenty-five 
 percent minority discount and a thirty percent marketability discount to Husbands 
 interest.   Even after increasing the minority and marketability discounts pursuant 
 to Husbands motion for reconsideration, the family courts discounts were less 
 than the discounts Husbands expert would have recommended in his testimony.  
Therefore, we find the family court abused 
 its discretion by excluding the testimony of Husbands expert witness.  Accordingly, 
 we do not reach the merits of the parties arguments as to the family courts 
 valuation of Husbands interests in Design/Build and DBE.  Instead, we remand 
 this issue to the family court so that the testimony of Husbands expert may 
 be admitted and given full consideration.  In remanding, we do not make any 
 finding as to the propriety of applying discounts to Husbands interest in Design/Build 
 and DBE.  Rather, we remand for a de novo determination of the 
 value of these assets, including Husbands claim that discounts should be utilized.
B. Valuation of the Motorcycle
Wife also contests 
 the family courts valuation of Husbands motorcycle.  She first argues the 
 family court erred by relying too heavily on Husbands testimony.  We disagree.  
At the final hearing, Wife testified 
 that the purchase price of the motorcycle in 1998 was $8,300.  She further testified 
 that she did not feel that the motorcycle had depreciated in value at all over 
 time and that its current value remained at $8,300.  Husband agreed he had paid 
 $8,320 when he purchased the motorcycle, but testified the motorcycle had sustained 
 body damage after being accidentally dropped, and that the damage had not been 
 repaired at the time of the hearing.  Husband also admitted evidence, over Wifes 
 objection, that the Kelly Blue Book value as of the date of the hearing for 
 that make and model motorcycle with no damage was $4,835.  The family court 
 ultimately valued the motorcycle at this blue book amount.
The credibility of testimony is a matter 
 for the fact finder to judge.  S.C. Dept of Soc. Servs. v. Forrester, 
 282 S.C. 512, 516, 320 S.E.2d 39, 42 (Ct. App. 1984).  In this case, the family 
 court was in a better position to evaluate the credibility of the parties testimony.  
 Accordingly, we find no reason to conclude the family court erred in its consideration 
 of Husbands testimony on this issue.
Wife also argues the family court improperly 
 relied on the blue book value of the motorcycle in assessing its value.  She 
 claims the $4,835 amount quoted does not accurately reflect the value of the 
 motorcycle in the present case because that blue book figure represented the 
 wholesale trade-in value of the bike.  This argument was not presented to 
 the trial court and is therefore not preserved for appeal.  See Staubes 
 v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ([A]n 
 issue cannot be raised for the first time on appeal, but must have been raised 
 to and ruled upon by the trial court to be preserved for appellate review.).  
 Wife objected to the admission of the blue book figure because the value quoted 
 in the blue book was the value of the motorcycle in March 2000, over a year 
 after the commencement of the marital litigation in this case.  Wife asserts 
 this argument on appeal.  However, we find the date of the blue book value goes 
 to the weight of the evidence and not its sufficiency.   The weight to be given 
 to evidence lies within the province of the fact finder.  Bailey v. Bailey, 
 293 S.C. 451, 453, 361 S.E.2d 348, 350 (1987).  Because the family court was 
 in a better position to weigh the evidence presented at trial, we find the court 
 did not err in assessing the value of the motorcycle.
II. Alimony
Wife next argues the family court erred 
 by awarding her rehabilitative alimony rather than permanent periodic alimony.  
 Section 20-3-130(C)(8) of the South Carolina Code (Supp. 2002) requires a court, 
 in awarding alimony, to consider, inter alia, the marital and nonmarital 
 properties of the parties, including those apportioned to him or her in the 
 divorce or separate maintenance action.  Although we do not hold that an award 
 of rehabilitative alimony is improper in this case, we find the amount of the 
 rehabilitative alimony awarded was at least partially predicated on an amount 
 of money Wife had previously received from her interest in Design/Build and 
 DBE.  In light of our decision to remand the issue of equitable division of 
 marital property, we remand the issue of alimony to the family court.
III. Child Custody
Wife argues the family court erred in 
 awarding Husband primary placement of the parties minor children. We disagree.
In all child custody disputes, 
 the paramount considerations are the childs welfare and best interests. Cook 
 v. Cobb, 271 S.C. 136, 140, 245 S.E.2d 612, 614 (1978). In awarding custody, 
 the family court should consider how the custody decision will impact the childs 
 life, including physical, psychological, spiritual, educational, familial, emotional, 
 and recreational aspects.  Woodall v. Woodall, 322 S.C. 7, 11, 471 S.E.2d 
 154, 157 (1996).  Additionally, the court must assess how each partys character, 
 fitness, and attitude affect the child. Id.  Indeed, when determining 
 to whom custody shall be awarded, all the conflicting rules and presumptions 
 should be weighed together with all of the circumstances of the particular case, 
 and all relevant factors must be taken into consideration. Id.  
In this case, Husband has had 
 primary placement of the children since September 1999.  Our courts have considered 
 a parents history as the primary caretaker to be an important factor in determining 
 which parent is best suited to receive custody of a child.  See Smith 
 v. Smith, 294 S.C. 194, 197, 363 S.E.2d 404, 406 (Ct. App. 1987) (holding 
 that the fact the wife had custody of the children since the parties separation 
 alone supports the trial courts decision in this instance to place the children 
 in the wifes custody); West v. West, 294 S.C. 190, 193, 363 S.E.2d 
 402, 403 (Ct. App. 1987) (awarding custody to the husband after finding that 
 he had been the primary caretaker of the children in the months prior to separation); 
 Roy T. Stuckey, Marital Litigation in South Carolina: Substantive Law 433 (3d ed. 2001) (There is an assumption that custody will be awarded to the 
 parent who has been the primary caretaker of the children, unless unfitness  
 is proved or there is other evidence that the welfare of a child will be better 
 served by awarding custody to the other parent).
Additionally, the evidence supports 
 the family courts finding that Husband has taken a more active role in the 
 daily lives of the children.  Husband was primarily responsible for getting 
 the children ready each morning and taking them to school or daycare.  He also 
 shared in the responsibility of picking up the children after school, and served 
 as the primary facilitator of the childrens after-school sports activities.  
 Furthermore, the family court 
 found Husband has been able to manage the childrens behavior more appropriately 
 than Wife. This conclusion is supported by the observations and recommendations 
 of independent experts contained in the record.  The guardian ad litem concluded 
 that:
Based upon [the psychologists] 
 report and the parties actions during this litigation, I believe the father 
 will allow the mother to participate in the childrens lives.  It does not appear 
 the mother will allow the father to do so. The report also indicates the children 
 have fewer behavioral problems with the father and therefore a more stable environment. 
Indeed, the psychologists report states that [Wife] 
 does appear to be much less able to behaviorally manage the children . . . .  
 I would not judge her to be seriously deficient in this area, but in comparison 
 to [Husband] she is clearly less well-equipped. 
Therefore, under the facts and circumstances 
 of this case, we find no error in the family courts decision to award primary 
 placement of the children to Husband.
CONCLUSION
For the foregoing 
 reasons, we affirm the family courts valuation of Husbands motorcycle and 
 determination of child custody.   However, as to the valuation of the Husbands 
 business interests, we remand to the family court for consideration of Husbands 
 expert testimony.  Because we remand a portion of the equitable division of 
 marital property, we also remand the issue of alimony.
AFFIRMED IN PART AND REMANDED IN PART.
HEARN, C.J., HOWARD and KITTREDGE, JJ., concur.

 [1] Wifes own expert and attorney met with Joyner 
 and questioned him the day before trial.

 [2] The final hearing in this case came to a conclusion 
 on April 13, 2000.  The opinion in Jumper was decided on December 17, 
 2001, more than one year after the final hearing.