THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
William Barry Chisholm,       
Appellant/Respondent,
 
 
 

v.

 
 
 
Susan Elaine Chisholm,       
Respondent/Appellant.
 
 
 

Appeal From Greenville County
R. Kinard Johnson, Jr., Family Court 
 Judge

Unpublished Opinion No.  2005-UP-067
Heard November 16, 2004  Filed January 
 25, 2005

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 
 
 
Timothy E. Madden, of Greenville, for Appellant-Respondent. 

David Alan Wilson and Kenneth C. Porter, both of Greenville, 
 for Respondent-Appellant.
 
 
 

PER CURIAM:  This is a cross-appeal from 
 a divorce action.  William Barry Chisholm, the husband, argues the family court 
 erred in: (1) declining to grant him a divorce on the ground of adultery, (2) 
 granting custody of the parties minor child to Susan Elaine Chisholm, the wife, 
 (3) refusing to expand his visitation rights, (4) ordering him to bear sole 
 financial responsibility for the childs private school expenses, (5) finding 
 a portion of an IRA was marital property, and (6) declining his request for 
 attorneys fees and awarding attorneys fees to the wife.  The wife argues the 
 family court erred in awarding the husband sole ownership of the marital home 
 and in refusing to increase the marital estate by $10,000.00.  We affirm in 
 part, reverse in part, and remand. 
FACTS
The parties married in 1979.  Both 
 were employed and had limited assets, including retirement funds.  Before the 
 marriage, the husband purchased a home that would become the marital residence.  
 Two children were born of the marriage, one of whom was still a minor at the 
 time of the final hearing. 
In the spring of 2000, the wife reacquainted 
 herself with a male friend from high school.  For several months, the wife, 
 either directly or through the parties older child, communicated with this 
 individual through letters, electronic mail, and telephone.  Eventually, the 
 two revealed their mutual and long-standing affections for each other and, in 
 August 2000, arranged a clandestine meeting at a motel, where they engaged in 
 sexual relations with each other.  
For months, the wife concealed her adultery from 
 the husband; however, tensions arose in the parties relationship, and she began 
 acting erratic and unstable.  In October 2000, the wife was admitted to the 
 hospital, where she was diagnosed with recurrent major depression and placed 
 on medication.  After her release from the hospital, the parties resumed living 
 together; however, they never really reconciled and tensions escalated.  
In July 2001, the husband filed for divorce on 
 the ground of adultery. [1]   He also sought custody of the 
 parties younger child and equitable apportionment of the marital property.  
 In her answer and counterclaim, the wife admitted adultery and sought custody.  
 At trial, both parties amended their pleadings to seek a no-fault divorce on 
 the ground of a one year separation; however, the husband did not abandon the 
 fault ground of adultery.  
After hearing evidence on the contested 
 issues, the family court granted a no-fault divorce.  The wife received custody 
 of the parties minor child, and the marital property was divided equally between 
 the parties.  The husband received liberal visitation and was ordered to pay 
 child support, including all private school expenses.  The family court granted 
 the husband a special interest in the marital home and awarded attorneys fees 
 to the wife.  Both parties unsuccessfully filed post-trial motions under Rule 
 59(e) of the South Carolina Rules of Civil Procedure, and this appeal followed. 

LAW/ANALYSIS
The Husbands Appeal
1.  The husband argues the family court erred 
 in granting a no-fault divorce instead of a divorce on the ground of adultery.  
 We disagree.  
[A] divorce is not a prize given in recognition 
 of a victory in a contest. [2]   Here, assuming without deciding 
 that the wifes adultery was the immediate cause of the breakup of the marriage, 
 the grant of a no-fault divorce did not prejudice the husband.  The wife had 
 waived her right to seek alimony, and the family court stated it considered 
 the wifes admitted adultery and found her misconduct did not affect the economic 
 condition of the parties. [3]   
 Furthermore, although the husband may be correct that the family court was able 
 to grant a divorce on the ground of a one-year separation only because docket 
 constraints prevented this matter from being heard at an earlier date, we fail 
 to see how this circumstance would entitle him to a divorce on a fault ground.  
 Finally, the husband does not suggest that spiritual or other considerations 
 proscribe him from obtaining a divorce on the ground of a one-year separation.
2.  Second, the husband contends the trial court erred 
 in failing to award him custody of the parties minor child.  We find no reason 
 to reverse the family courts decision.
The welfare of the child and what is in his/her 
 best interest is the primary, paramount and controlling consideration of the 
 court in all child custody controversies. [4]   However, where evidence is 
 disputed [in a family court matter], the appellate court may adhere to the findings 
 of the trial judge, who saw and heard the witnesses. 
 [5]   In particular, an appellate court should be reluctant to substitute 
 its own evaluation of the evidence on child custody for that of the trial court. 
 [6]   Our broad scope of review does not relieve an appellant of the burden 
 to convince this court that the family court erred in its factual findings and 
 conclusions. [7] 
Here, the family court heard extensive testimony 
 on the custody issue from the parties, mental health professionals, and the 
 guardian ad litem.  Mental health professionals testified that, although the 
 child would be fine with either parent, the wife had been his primary caregiver.  
 We hold the family court properly considered evidence on the strengths and weaknesses 
 of each parent and therefore affirm the finding that the childs best interests 
 would be served by placing him in the wifes custody.  
3.  Alternatively, the husband argues that if the 
 family courts decision regarding custody is affirmed, he is entitled to more 
 extensive visitation.  We agree.  
[V]isitation is addressed to the broad discretion 
 of the family court. [8]   Nevertheless, as with child custody, the welfare 
 and best interests of the child are the primary considerations in determining 
 visitation. [9]   
The family court initially granted the husband 
 visitation in accordance with Judge Browns Standard Visitation Order, which 
 was attached to and incorporated into the appealed order.  After the husband 
 moved to alter or amend the judgment, the family court amended the order as 
 follows:  [The husband] shall have such additional visitation with the parties 
 minor child, as the parties may agree.  Notwithstanding this revision, we hold 
 the evidence indicates the childs best interests would be served by granting 
 the husband specified visitation over and above what he would receive in a standard 
 visitation order.  The husband had maintained an active role in the childs 
 life.  Furthermore, although the wife expressed a desire that the husband have 
 liberal visitation with the child, it was evident that the parties did not communicate 
 well.  We therefore remand the issue of visitation to the family court with 
 directions to grant the husband liberal visitation at specified times.
4.  We agree with the husband that the 
 family court erred in ordering him to bear sole financial responsibility for 
 the childs private school expenses without making an adjustment in his child 
 support obligation.  
The husband maintained the child should 
 continue to attend private school and testified that he would do whatever it 
 takes to enable the child to maintain this privilege.  The wife, however, did 
 not believe that private schooling was necessary.  We find it significant that 
 the family court agreed with the husband that it was in the childs best interest 
 to remain in private school and that the wife did not appeal this finding.  
 Moreover, the record supports this determination.  In particular, we note (1) 
 the child attended this particular school all his life and was already in high 
 school when this case came to trial; and (2) the child had been diagnosed with 
 ADHD, making a private school, with its smaller classes and more individualized 
 attention, a preferable choice to a public school.
The child support guidelines require 
 the parties to share in the support of a child proportionate to the income earned 
 by each of them. [10]   In addition, 
 the regulations expressly provide that payment of education expenses can be 
 a possible reason for deviation from the child support guidelines. 
 [11]   We therefore reverse the child support decision and remand this matter 
 to the family court with instructions either to allocate the private school 
 expenses between the parties on a pro rata basis or in the alternative to grant 
 the husband a downward adjustment in his support obligation if he is ordered 
 to pay more than his pro rata share of these expenses.
5.  The husband next argues $35,357 of 
 an IRA was nonmarital property and thus improperly included in the marital estate.  
 We agree.  
Property acquired by either party prior 
 to the marriage is generally nonmarital property. 
 [12]   In some circumstances, however, nonmarital property may be transmuted 
 into marital property if (1) it becomes so commingled with marital property 
 as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the 
 parties in support of the marriage or in some other manner so as to evidence 
 an intent by the parties to make it marital property. [13]   Transmutation is a matter of intent to 
 be gleaned from the facts of each case, and the spouse claiming transmutation 
 must produce objective evidence showing that, during the marriage, the parties 
 themselves regarded the property as the common property of the marriage. 
 [14]   
The husband testified in detail about 
 the retirement assets he owned at the time of the marriage, the manner in which 
 they were invested, the records he maintained during the marriage, and the mathematical 
 computation of the premarital component of his IRA, with growth on that portion 
 during the marriage.  Moreover, notwithstanding the commingling and the fact 
 that the husband managed the wifes retirement funds as well as his own, we 
 hold the wife failed to make a prima facie case that the parties 
 themselves regarded the funds as the common property of the marriage. 
 [15]   
 Finally, the husband argues the family 
 court erred in awarding attorneys fees to the wife and in denying attorneys 
 fees to him.  In view of the beneficial results obtained by the husband in this 
 appeal, we remand this issue to the family court for further consideration. [16] 
The Wifes Appeal
1.  The wife argues 
 the family court erred in awarding the husband sole ownership of the marital 
 home after finding the home was transmuted into marital property.  We disagree.  
    
A family court may 
 grant a spouse title to the marital home as part of the equitable distribution. 
 [17]   The family court, in dividing the marital assets, must give weight 
 in such proportion as it finds appropriate to all of the following factors [including] 
 the desirability of awarding the family home as part of [the] equitable distribution. 
 [18]   
On review, this court 
 looks to the fairness of the overall apportionment, and if the end result is 
 equitable, the fact that this court might have weighed specific factors differently 
 than did the trial court is irrelevant. [19]   This court will affirm an 
 equitable apportionment if it is apparent that the family court was cognizant 
 of the statutory factors. [20]   
The family court found 
 the husband had a special equity in the marital residence because he paid 
 a $25,000 down payment on the home before the marriage, had funds available 
 to pay the full purchase price, and used those funds to pay the debt within 
 five years.  Although the residence was valued at $295,000, the total equity 
 was only $75,500.  In addition, the husband assumed sole responsibility for 
 all indebtedness under the order.  In view of these factors, we hold the decision 
 to award ownership of the marital residence to the husband is fair and equitable.
2.  The wife also argues the family court 
 should have included as a marital asset $10,000 that the husband withdrew from 
 a marital account shortly before commencing this litigation.  We disagree.  
 The wife alleges the funds were withdrawn in contemplation of the divorce action; 
 however, the husband, although acknowledging that he paid his attorney a retainer 
 fee of $10,000, never admitted that the money taken from the account was used 
 for this purpose, suggesting instead that it may have been spent on their childs 
 private school tuition.  No documentation, such as a cancelled check, was provided 
 to enable the family court to determine whether or not the husband had improperly 
 liquidated this asset.  Having been provided with no plausible explanation as 
 to why the wife could not have procured such evidence herself, we are reluctant 
 to disturb the family courts refusal to find the funds in dispute are part 
 of the marital estate. [21] 
AFFIRMED IN PART, REVERSED IN PART, 
 AND REMANDED.
HEARN, C.J., and GOOLSBY and WILLIAMS, 
 JJ., concur.

 
 
 [1]   Although the wife confessed her affair and already had her emotional 
 breakdown, the husband waited until their older child graduated before seeking 
 a divorce.

 
 
 [2]   Miles v. Miles, 303 S.C. 33, 35, 397 S.E.2d 790, 791 (Ct. 
 App. 1990); see also Smith v. Smith, 294 S.C. 194, 197, 363 
 S.E.2d 404, 406 (Ct. App. 1987) (rejecting a husbands contention that he 
 should have been awarded a divorce on his counterclaim when his wife received 
 a divorce on the ground of a one-year separation and noting that the granting 
 of a divorce to the husband on the ground of adultery would not have dissolved 
 the marriage any more completely).

 
 
 [3]   See Woodside v. Woodside, 290 S.C. 366, 374, 350 S.E.2d 
 407, 412 (Ct. App. 1990) (stating that a spouses marital misconduct becomes 
 important in equitable distribution only when the conduct . . . is such that 
 it throws upon the other party marital burdens beyond the norms to be expected 
 in the marital relationship).

 
 
 [4]   Cook v. Cobb, 271 S.C. 136, 140, 245 S.E.2d 612, 614 (1978).

 
 
 [5]   Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 
 157 (1996).

 
 [6]   Id. at 10, 471 S.E.2d at 157.  

 
 [7]   Skinner v. King, 272 S.C. 520, 
 522-23, 252 S.E.2d 891, 892 (1979).  

 
 
 [8]   Paparella v. Paparella, 340 S.C. 186, 191, 531 S.E.2d 297, 
 300 (Ct. App. 2000).

 
 [9]   Woodall, 322 S.C. at 12, 471 S.E.2d at 
 158.

 
 
 [10] 27 S.C. Code Ann. Regs. 114-4710 and -4750 (Supp. 2004).

 
 
 [11] See id. 114-4710B(1) (stating [e]ducational expenses 
 for the child(ren) . . . (i.e., those incurred for private, parochial, or 
 trade schools, other secondary schools, or post-secondary education where 
 there is tuition or related costs) can be [a] possible reason[ ] for deviation).

 
 [12] S.C. Code Ann. § 20-70-473(2) (Supp. 2004).

 
 [13] Greene v. Greene, 351 S.C. 329, 338, 
 569 S.E.2d 393, 398 (Ct. App. 2002), cert. denied (June 12, 2003).

 
 
 [14] Widman v. Widman, 348 S.C. 97, 117, 557 S.E.2d 693, 703-04 
 (Ct. App. 2001).

 
 
 [15] See Wannamaker v. Wannamaker, 305 S.C. 36, 40, 406 
 S.E.2d 180, 182 (Ct. App. 1991) ([T]he mere commingling of funds does not 
 automatically make them marital funds.).

 
 
 [16] See Sexton v. Sexton, 310 S.C. 501, 503, 427 S.E.2d 
 665, 666 (1993) (wherein the supreme court reversed this courts affirmance 
 of an attorneys fee award in a divorce case, noting that the petitioner prevailed 
 on numerous issues when the court of appeals decided the matter).

 
 [17] Craig v. Craig, 
 358 S.C. 548, 558, 595 S.E.2d 837, 841 (Ct. App. 2004).  

 
 [18] S.C. Code Ann. § 20-7-472(10) (Supp. 2004).

 
 
 [19] Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 
 107, 113 (Ct. App. 1988).

 
 
 [20] Doe v. Doe, 324 S.C. 492, 502, 478 S.E.2d 854, 859 
 (Ct. App. 1996).  

 
 
 [21] See Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 
 541, 541 (1981) (stating that, notwithstanding the scope of review in an equity 
 matter, an appellate court is not required to disregard the findings below 
 nor ignore the better vantage point the trial judge occupies in determining 
 witness credibility and [t]he burden is upon the appellant to convince this 
 Court that the trial judge erred in his findings of fact).