THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Michael Kelley, Appellant,
 v.
 Debra Kelley, Respondent.
 
 
 

Appeal From Aiken County
C. David Sawyer, Jr., Family Court Judge

Unpublished Opinion No. 2007-UP-324
 Submitted June 1, 2007  Filed June 15,
 2007

AFFIRMED

 
 
 
 Michael Kelley, of Aiken, pro se Appellant.  
 John L. Creson, of Augusta, for Respondent.
 Paige Weeks Johnson, of Aiken, Guardian Ad Litem.  
 
 
 

PER CURIAM:  Michael
 Kelley filed this divorce action against Debra Kelley.  The family court
 awarded custody of the parties two minor children to wife.  Husband appeals. 
 We affirm.[1] 
FACTS
The parties were married when both were
 residents of California.  They had two sons, Sean (12) and Joshua (11).  The
 parties remained in California until husbands business failed, and the parties
 declared bankruptcy.  The parties decided to move to Aiken, South Carolina,
 where husband intended to start a business with his father.  In June 2001,
 husband and the children left California for Aiken.  Wife remained behind to
 assist her family, intending to follow in a few weeks.  During several
 telephone calls prior to wifes move, husband dissuaded her from joining them because
 the house he was renovating for the family was not complete.  Husband and
 children lived with husbands parents during the renovation.  Wife testified
 that despite husbands continued dissuasion, she traveled to Aiken in August. 
 While in Aiken, husband refused to move into an apartment while the house was being
 completed, stalled wife when she attempted to get a South Carolina drivers
 license, was reluctant to add her to their automobile insurance, and limited
 her access to the parties vehicle.  Husband told the wife it was too cramped
 at his parents home, and wife returned to California to await completion of
 the house.  During the next few months, husband continually discouraged wife
 from returning.  Again, despite his attitude, she arrived in Aiken in early
 December, and the parties moved into the marital home.  
In February 2002, wife returned to California for gastric bypass
 surgery, which would have been prohibitively expensive in Aiken due to the
 parties insurance coverage.  Without her knowledge, husband filed an action
 for separate support and maintenance seeking, inter alia, custody of the
 children.  A week before wife was scheduled to return to Aiken, husband called
 and ordered her to live with his parents upon her return to Aiken.  Husband
 threatened to limit her visitation with the children to his parents home
 during the hours after school until he returned home from work.  Wife sought
 advice of counsel in California and learned of the pending action for divorce
 in South Carolina.  Wife filed for divorce in California.  The children
 remained in Aiken with husband.  
Numerous school witnesses testified wife remained very involved
 with the children, whereas husband was very controlling and had difficulties
 with anger management.  For instance, the school was piloting an all students
 breakfast program.  Husband did not want the children to participate and
 brought them to school late.  The school pursued the matter, as the children
 were missing instruction time in addition to breakfast.  Husband consented to
 adhering to the time, but refused to allow them to eat with the rest of the
 class.  Husband forbade the children from attending field trips, argued with a
 teacher about providing a particular type of composition book, required notice
 before the children could see the school nurse, omitted virtually all required
 personal information during registration, and sent the children to school
 without proper clothing.  When the children brought fundraising material home
 from school, the husband wadded it up and sent it back saying he sent his
 children to school to learn and not to raise money for the school.  Seans
 third-grade teacher explained:  It seemed like everything was an issue with
 him.  That was negative and hard to fit and hard to do.  Just I had a really
 hard time with him.  She described a class science project of planting seeds. 
 Sean was not permitted to water his seeds with school water, but had to bring
 water from home.  Husband also forbade the school from teaching his children
 that drugs and guns were bad.  Seans teacher felt that the communication with husband
 was so poor, she would not notify him of anything for fear Sean would be
 severely punished.  In a similar vein, wifes mother testified that husband was
 quick to anger and spanked the children with force [that] was extremely hard. 
Prior
 to the move to Aiken, wife was the primary caretaker.  While in California after the family move, wife communicated with the principal, teachers, and Sean
 by letters and e-mail.  When in Aiken, wife and her mother visited the school. 
 She notified Joshuas teacher about his birthday and explained that, although
 she did not have access to a vehicle, she wanted to provide cupcakes for the
 class.  
The
 family court in Aiken held a temporary hearing in June 2002, as a result of
 which it awarded husband temporary custody and appointed a guardian ad litem.  Three
 additional hearings were held over the course of the summer of 2003, and the
 guardian ad litem submitted her report.  The guardian testified she interviewed
 over twenty individuals in preparing her report and testimony.  Her concerns
 about husband related to his temper, controlling behavior, some indications of
 depression, and the overall effects upon his ability to parent.  She was also
 concerned about husbands alleged cruelty to animals, particularly in view of
 the fact the cruelty was committed in the presence of the children.  She
 concluded that it was in the best interest of Joshua and Sean to live with wife
 in California.  
Following the three hearings during the summer of 2003 and after
 the submission of the guardians report, the court issued a supplemental
 temporary order transferring custody of the children to wife and limiting husbands
 visitation.  The final hearing was held in November 2003, after which the court
 took the matter under advisement due to the voluminous record.  In its final
 order, issued on May 25, 2004, the court granted the parties a divorce and
 awarded custody of the children to wife.  
STANDARD OF REVIEW
On appeal from the family court This broad
 scope of review, however, does not relieve the appellant of the burden of
 convincing us that the family court committed
 error.  Skinner v. King, 272 S.C. 520, 522-23, 252 S.E.2d 891, 892
 (1979).  Nor are we required to ignore the fact that the trial judge, who saw
 and heard the witnesses, was in a better position to evaluate their credibility
 and assign comparative weight to their testimonies.  Cherry v. Thomasson,
 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).  
LAW/ANALYSIS

Husband argues the
 family court violated his rights to due process by failing to issue the final
 order within thirty days.  We disagree.
Rule 26(c), SCRFC
The South Carolina Rules
 of Family Court provide:  Except under exceptional circumstances, an order in
 a domestic relations case shall be issued as soon as possible after the
 hearing, but not later than 30 days thereafter.  Rule 26(c), SCRFC.  The
 family court did not issue an order until more than six months after the conclusion
 of the hearing in this case.  We can understand husbands angst because of the
 delay in the final order.  However, this case was more difficult than the
 ordinary case, requiring four days of testimony.  The court informed the
 parties at the conclusion of the final day of hearings that due to the volume
 of evidence and the necessity of the court reviewing it carefully it was
 unlikely that a final order would comply with the mandate of Rule 26(c).  Additionally,
 the final order itself consists of fourteen pages, and was obviously carefully
 crafted, particularly as it relates to husbands visitation privileges.  The delay
 in filing and serving the final order resulted in little or no prejudice to
 husband.  See Matter of Price, 277 S.C. 169, 170, 284 S.E.2d 356,
 356 (1981) (finding denial of motion to dismiss for failure to comply with
 Rules of Family Court prescribing maximum forty day period between filing of
 petition against minor and adjudicatory hearing not reversible where no
 material prejudice).
Custody
Husband also argues
 the family court erred in granting custody of the children to wife.[2] 
 We disagree.
 In reviewing a
 family court order awarding custody, [w]e are guided by several principles.  Davis v. Davis, 356 S.C. 132, 135, 588 S.E.2d 102, 103 (2003). 
 First, an
 appellate court may find facts in accordance with its own view of the
 preponderance of the evidence.Id. Second, the appellate court need not disregard the family
 courts findings or ignore the fact the family court judge observed the
 witnesses and was in a better position to judge their credibility.  This
 degree of deference is especially true in cases involving the welfare and best interests of children.  Id. (quoting Dixon v. Dixon,
 336 S.C. 260, 262-63, 519 S.E.2d 357, 358-59 (Ct. App. 1999)).  Third, [t]he welfare of the child and what is in his/her best interest is the primary, paramount and controlling consideration of the court in all child custody controversies.  Id. at 135, 588 S.E.2d
 at 103-104 (quoting Cook v. Cobb, 271 S.C. 136, 140, 245 S.E.2d 612, 614
 (1978)).
The family court
 temporarily awarded custody to wife after the first three days of testimony on
 May 28, 2003, July 28, 2003, and August 5, 2003.  The court expressed concern
 that school was about to begin, and the children needed stability for the
 upcoming year.  At that time, most of the parties witnesses had testified,
 including a counselor, numerous teachers and school officials, and husband.  The
 guardian had submitted a detailed report and actively participated in the
 hearings.  The only remaining witnesses were the guardian and wife.  The
 guardians initial report favored custody with wife.  The school officials and
 guardian indicated husband suffered from anger and control issues, and the
 court temporarily suspended husbands visitation.  The guardian testified the
 final day, stating the children seemed to be faring well in California, and her
 opinion had not changed. 
The court stated it
 had never heard teachers and school officials who were as emphatic as
 witnesses.  The court considered the many confrontations between husband and
 school personnel in which husband expressed dissatisfaction with school policy
 involving the children.  The court also noted that even after two years, the
 children had few friends in Aiken.  Finally, the court considered the
 guardians experience, qualifications, and conclusions.  The court ordered
 custody to remain with wife in California, and required husband to complete
 anger management and parenting skills classes prior to receiving unsupervised
 visitation.  After review of the record, we find no error.  The courts
 paramount concern in determining custody issues is to protect the best interest
 of the children.  The preponderance of the evidence demonstrates that it is in
 the childrens best interest to be with wife.
Guardian ad litem Fees
Husband
 finally argues the guardian failed to be impartial and submitted exorbitant
 fees.  We find no reversible error. 
The guardians
 report listed over twenty individuals she had interviewed and her supplemental
 report included follow-up with the childrens California counselor.  One of the
 primary functions of a guardian, in a case of this type, is to make
 recommendations to the court as to custody and other issues.  Just because a
 guardian comes down on the side of one party or the other does not, in and of
 itself, indicate a lack of impartiality.  As an indication of the guardians
 impartiality, she recommended a consultant to perform testing who thereafter
 disagreed with her by indicating he thought custody should remain with
 husband.  The guardian concluded both parents loved the children and were able
 to meet their basic physical needs.  We find no evidence the guardian failed to
 exercise independent, impartial judgment. 
We likewise find
 support in the record justifying the guardians fees.  An award of guardian
 fees is within the discretion of the family court.  Shirley v. Shirley, 342
 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct. App. 2000).  The court ordered each
 party to pay one-half of the guardians total fees of $7,071.36.  We find the
 guardian expended a substantial amount of time in interviewing witnesses and
 preparing for and participating in the hearings.  The fees are reasonable considering the complexities
 of the case.  Accordingly, we find no error.
AFFIRMED.
STILWELL,
 SHORT, and WILLIAMS, JJ., concur.
 

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] We consolidate several of husbands issues on appeal.